UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.G., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>SAN FRANCISCO UNIFIED SCHOOL DISTRICT, et al.,<br><br>    Defendants. | Case No. 17-cv-05678-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Docket No. 43 |

Plaintiff S.G., a minor acting by and through her parents, alleges that Defendant Donavan Eagle Harper, a teacher at Defendant San Francisco Unified School District ("SFUSD" or "the District"), sexually abused her and that the District failed to take timely action to intervene and, after eventually placing Harper on leave, failed to remedy the effects of the harassment on Plaintiff. The pending motion is brought by all Defendants except Defendant Harper, who has not made an appearance in the case and has not joined the motion.[1] The motion is appropriate for resolution without oral argument. *See* Local Civ. R. 7-1(b).

For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion. Consistent with this order, Plaintiff may file an amended complaint within thirty (30) days. The May 31, 2018 hearing and case management conference are **VACATED**.

## I.     FACTUAL ALLEGATIONS

A.   Pattern of Abuse

S.G. was an eleven-year-old, sixth-grade student at SFUSD's Martin Luther King Junior Middle School ("MLK") for the 2016-2017 school year. First Amended Compl. ("FAC") ¶ 4.

---

[1] For convenience, this order will refer to the motion as "Defendants' motion" although the phrase should be understood to exclude Defendant Harper.

Defendant Harper was a physical education teacher at MLK during the 2016-2017 school year, who also assisted S.G. with her homework during Defendant Anna Roberds' math class. *Id.* ¶¶ 8, 10.

During Roberds' class, Harper "frequently engaged in grooming behavior" that was "designed to befriend a child and establish an emotional connection in order to lower [her] inhibitions." *Id.* ¶ 10. Harper gave S.G. "extra help on homework, showered her with compliments, asked her about her interests, encouraged her to eat healthy and told S.G. he cared for her." *Id.* Roberds was present during this behavior. *Id.*

Harper escalated his behavior in Roberds' classroom. He began to engage in sexual physical contact, including hugging S.G., sitting close to her while providing her with in-class assistance, and petting or rubbing the middle of her back. *Id.* ¶ 12. This physical contact escalated to sexual abuse including caressing and stroking S.G.'s hip, running his fingers through her hair, playing with her ear lobes, sitting inappropriately close so that his thighs were touching hers, caressing her back, pressing his body against hers, and wrapping his arms around S.G. and stroking her breasts. *Id.* ¶ 13. Roberds was allegedly present for this too. *Id.* ¶¶ 12-13. Roberds allegedly "saw or should have seen" Harper's behavior. *Id.* ¶ 14.

Harper also engaged in inappropriate conduct outside the classroom but on school grounds. Around campus, he attempted to isolate S.G. from her friends, waited for her before school outside of the school building (in view of District employees), called her name loudly and then blew kisses at her. *Id.* ¶¶ 17-18. District employees "observed, or should have observed, this behavior." *Id.* ¶ 18.

Harper also stalked S.G. by loitering near her after school while she played soccer with her friends on campus. *Id.* ¶ 22. He "coerced her into conversation and sexually inappropriate touching." *Id.* District employees "saw or should have seen" this after-school conduct. *Id.*

Harper threatened to hurt S.G.'s family if she disclosed the abuse, *id.* ¶ 19, but much of his abuse was performed "[i]n plain daylight." *Id.* ¶ 20. Many of S.G.'s peers witnessed Harper's sexual abuse, and certain District personnel—including Defendants Roberds, MLK Assistant Vice Principal Dinora Castro, and MLK Principal Michael Essien—saw or should have seen the abuse.

2

*Id.*

S.G. reacted by attempting to avoid Harper, even trying to run past or around him while he waited for her to arrive at school. *Id.* ¶¶ 21, 23.

B. The District's Intervention and Reaction

On October 16, 2016, Defendant Dinora Castro, the Assistant Principal of MLK, called S.G. to her office to request statements from her and four other victims of Harper's abuse. *Id.* ¶ 24. Plaintiff does not allege how Castro came to learn about S.G.'s abuse or the other victims. Nevertheless, Defendant Michael Essien (MLK Principal) and Roberts were allegedly informed of these meetings or "had reasonable suspicion" that they were taking place. *Id.*

During the meeting, Castro stated that she would call S.G.'s parents, but she did not do so. Rather, she instructed S.G. to call her mother, M.G., so that M.G. would meet with Castro in person. *Id.* ¶¶ 25-26. Apparently nothing happened in the days following this interaction. Nine days later, however, MLK sent a letter home to parents in English about Harper's "sexual harassment." *Id.* ¶ 27. S.G.'s parents, who speak Spanish, struggled to understand the letter. *Id.* ¶ 28. It is not clear whether the letter went to all parents or only to S.G's parents and it is not clear whether the letter specifically stated that S.G. had been victimized or merely reported that Harper was generally under investigation.

Other than the October 16 meeting and the subsequent letter, the District allegedly made no other attempt to inform S.G.'s parents what had happened to their daughter and what steps the District would be taking. *Id.* ¶ 30. S.G.'s mother, M.G., attempted to call MLK for clarification but the District never returned her call. *Id.* ¶ 31. M.G. thereafter went to the school to meet with Defendant Castro, who had no additional information. *Id.* ¶¶ 32-33. S.G.'s parents learned only that the matter had been referred to the police and was under investigation. *Id.* ¶ 34.

C. The Impact on S.G.

On account of Harper's abuse, S.G. experienced severe emotional and psychological distress. *Id.* ¶ 38. The District never offered S.G. counseling, therapy, or other support to redress what she experienced, despite observing the effects on her. *Id.*

In light of the District's failure to support S.G. or communicate with her parents, S.G.'s

3

parents decided in December 2016 to remove S.G. from MLK. *Id.* ¶ 39. At a meeting with the District, S.G.'s parents were told that her school record did not contain a report or any formal documentation of Defendant Harper's sexual abuse. *Id.* ¶ 40. They were told that they had to obtain a letter from MLK approving the transfer and verifying a reason. *Id.* ¶ 41. When they made the request, MLK staff were unresponsive, cold, and hostile; they provided transfer paperwork but it did not list sexual abuse as the reason. *Id.* ¶ 43.

S.G.'s peers at MLK apparently began to bully her when they learned she intended to transfer. *Id.* ¶¶ 44-47. District personnel, including Roberds, observed the bullying but took no action to intervene or to support S.G. *Id.*

S.G. now suffers from moderate to severe anxiety, depression, and posttraumatic stress disorder, has become socially isolated, and meets regularly with a therapist. *Id.* 48-50. She is now 14 years old. *Id.* ¶ 50. The experience has severely disturbed her and altered her personality. For example, she is ashamed to discuss the abuse; is worried Harper will abuse her, her family, or other children again; cuts her hair with scissors because it reminds her of Harper playing with it; has nightmares of Harper's abuse; no longer hugs her father; is reticent to physical affection; has grown apart from her parents and siblings; fears being alone with older men; hides her body with long shirts and pants; and wishes to make herself invisible. *Id.* ¶¶ 51-70.

## II.     LEGAL STANDARD

In considering a Rule 12(b)(6) motion to dismiss, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *See Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012); *OSU Student All. v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Lacey v. Maricopa County*, 693 F.3d 896, 911 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Id.*

### III. DISCUSSION

All Defendants except Harper move to dismiss all of Plaintiff's causes of action, except for the fifth (Unruh Civil Rights Act, California Civil Code § 51.9) and thirteenth (42 U.S.C. § 1983). Defendants argue that (i) the intentional tort claims based on Harper's conduct must be dismissed as against the District because it may not be liable under the doctrine of respondeat superior or ratification; (ii) the hostile environment claims under California and federal law must be dismissed for failure to allege the District's actual knowledge of the abuse or deliberate indifference to it; (iii) the negligence per se claim must be dismissed for failure to demonstrate a breach of statutory duty; and (iv) the negligent supervision, training, hiring, and detention claims must be dismissed for failure to allege the breach of any duties, inadequate training, or pre-hiring knowledge that certain District employees could not perform their duties. These arguments are analyzed below.

A. Intentional Torts

Plaintiff's first (assault), second (battery), third (false imprisonment), and fourth (intentional infliction of emotional distress) causes of action are all intentional torts premised on Harper's abuse. Plaintiff alleges the District is vicariously liable as Harper's employer, or because its failure to fully investigate and respond to the harassment constitutes ratification. *See* FAC ¶¶ 80-82, 88-90, 96-98, 105-107.

   1. Respondeat Superior

In general, "[a]n employer's liability extends to torts of an employee committed within the scope of his employment," including "willful and malicious torts as well as negligence." *John R. v. Oakland Unified School Dist.*, 48 Cal.3d 438, 447 (1989) (quotation and citation omitted). However, in *John R.*, the California Supreme Court held that a school district may not be liable through vicarious liability even when a teacher sexually abuses a student during the course of his or her employment. The Court explained that strict vicarious liability in this context would have "untoward consequences," including that it "would be far too likely to deter districts from encouraging, or even authorizing, extracurricular and/or one-on-one contacts between teachers and students or to induce districts to impose such rigorous controls on activities of this nature that the

educational process would be negatively affected." *Id.* at 451. Instead, concerns about ensuring "the careful selection of [school] employees and the close monitoring of their conduct" were "better addressed by holding school districts to the exercise of due care in such matters and subjecting them to liability *only for their own direct negligence* in that regard." *Id.* (emphasis added). Contrary to Plaintiff's suggestion, *John R*'s analysis did not turn on whether the activity took place at school or in the teacher's apartment—the court was clear that the rule applies even when the abusive acts occur within the scope of the teacher's employment.

For these reasons, Plaintiff's first, second, third, and fourth causes of action are **DISMISSED** against the District insofar as they are premised on vicarious strict liability.

2. Ratification

"As an alternate theory to *respondeat superior*, an employer may be liable for an employee's act where the employer either authorized the tortious act or subsequently ratified an originally unauthorized tort." *C.R. v. Tenet Healthcare Corp.*, 169 Cal.App.4th 1094, 1110 (2009); *see also* Cal. Civ. Code § 2307 (subsequent ratification may create agency relationship). "Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him." *Rakestraw v. Rodrigues*, 8 Cal.3d 67, 73 (1972). Such ratification may occur expressly or "by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred[.]" *Id.* The ratification theory of liability "is generally applied where an employer fails to investigate or respond to charges that an employee committed an intentional tort[.]" *C.R.*, 169 Cal.App.4th at 1110 (quotations and citations omitted). Evidence of ratification may include failure to discharge, censure, criticize, suspend, sanction, or otherwise take action. *Id.*; *see also Iverson v. Atlas Pacific Engineering*, 143 Cal.App.3d 219, 228 (1983). At bottom, whether an employer has ratified an employee's acts is a factual question. *C.R.*, 169 Cal.App.4th at 1110.

The District argues that it cannot be found to have ratified Harper's actions because it placed him on administrative leave. FAC ¶ 30. The District is correct that an employer can avoid ratification-based liability by taking steps short of termination, such as removing a student from a

harasser's classroom and otherwise punishing the offender. *See*, *e.g.*, *Garcia ex rel. Marin v. Clovis Unified School Dist.*, 627 F.Supp.2d 1187, 1201 (E.D. Cal. 2009). However, the mere fact that the District *eventually* placed Harper on administrative leave does not necessarily preclude a finding of ratification. Otherwise, a defendant could *always* evade liability by changing its course of conduct even after it has initially made a conscious determination to take no action, causing the plaintiff to suffer harm until the defendant later changes its mind.

Here, Plaintiff alleges that she was subject to Harper's undue attention, stalking, and sexual abuse in plain view of Defendant Roberds, other District personnel, and other students for five months of the 2016-2017 school year. FAC ¶ 142. The allegation is plausible because much of the abuse allegedly occurred in plain view of at least one teacher, other District supervisory personnel, and S.G.'s peers. Indeed, the very fact that the District knew to summon S.G. to ask about the abuse (when S.G. does not allege that she herself reported it) supports an inference of knowledge at some time prior to October 16, 2016. Despite that, the District allegedly took no action to respond until October 16, 2016, when Defendant Castro summoned S.G. to a meeting, several months after the abuse started. *Id.* ¶ 24. Moreover, the purpose of the meeting was to request a statement not only from S.G. but also four other victims. *Id.* Because a potentially long period passed between the District's alleged knowledge and its intervention, one plausible inference is that the District initially decided to take no action (thus prolonging S.G.'s abuse) but changed its mind after learning about other victims.

Though that may be sufficient to survive a motion to dismiss, the viability of the ratification theory ultimately may rest on how early the District knew of Harper's abuse of S.G., how long it waited before it responded, and whether the interim inaction can support a reasonable inference of implicit assent. That inquiry will be highly fact-specific. Because of the fact-intensive nature of this inquiry, it is premature to dismiss Plaintiff's claim at the motion to dismiss stage, particularly because the allegations must be viewed in her favor. The Court therefore **DENIES** Defendants' motion to dismiss the first, second, third, and fourth causes of action against the District based on a ratification theory of liability.

B.  Hostile Environment and Sexual Harassment Claims

Plaintiff's sixth, seventh, and twelfth causes of action allege that the District unlawfully tolerated a hostile educational environment created by Harper's misconduct in violation of the California Educational Code and Title IX of the federal Civil Rights Act of 1964.[2] California courts interpret the Education Code consistently with Title IX. *See Donovan v. Poway Unified School Dist.*, 167 Cal.App.4th 567, 595 (2008). The Court analyzes these three claims together.

To state a claim for damages under Title IX, the Supreme Court has held that a plaintiff must demonstrate a school district has "actual knowledge" of a teacher's sexual harassment of a student; constructive notice does not suffice. *See Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 284-287 (1998); *see also Lopez v. Regents of Univ. of Cal.*, 5 Supp.3d 1106, 1122 (N.D. Cal. 2013). Moreover, the defendant must act with deliberate indifference to support a claim for damages. *See Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 644-45 (1999); *see also Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 967 (9th Cir. 2010) (explaining that "[i]n sexual harassment cases, it is the deliberate failure to curtail known harassment, rather than the harassment itself, that constitutes the intentional Title IX violation"). The District argues that neither actual knowledge nor deliberate indifference is adequately pled.

1.  The District's Actual Knowledge

"The actual notice requirement under Title IX is satisfied where an appropriate official possessed enough knowledge of the harassment that it reasonably could have responded with remedial measures to address the kind of harassment upon which plaintiff's legal claim is based." *Lopez v. Regents of Univ. of Cal.*, 5 F.Supp.3d 1106, 1122 (N.D. Cal. 2013) (citation and

---

[2] *See* Cal. Educ. Code § 201(c) (finding that "harassment" "creates a hostile environment" that jeopardizes equal education); *id.* § 201(f) (affirming the California legislature's intent that "public school[s] undertake educational activities to counter discriminatory incidents on school grounds and . . . to minimize and eliminate a hostile environment . . . that impairs the access of pupils to equal educational opportunity); *id.* § 212.5 (defining sexual harassment to include "unwelcome sexual advances, requests for sexual favors, and other verbal, visual, or physical conduct of a sexual nature, made by someone from or in the work or educational setting," including when "[t]he conduct has the purpose or effect of having a negative impact upon the individual's work or academic performance, or of creating an intimidating, hostile, or offensive work or educational environment"); *see also* 20 U.S.C. § 1681(a) (setting similar requirements and prohibitions under federal law).

8

quotation omitted).

Plaintiff alleges that the District "knew or should have known of [Harper's] alleged conduct." *See* FAC ¶¶ 115, 124, 129. Because constructive knowledge is insufficient, Plaintiff must plead actual knowledge. Viewed as a whole, Plaintiff's allegations support a reasonable inference of the District's actual knowledge. Defendant Castro—MLK's Assistant Principal—knew at least as early as October 16, 2016, when she interviewed S.G. about Harper's harassment. *See* FAC ¶ 24. On October 25, 2016, MLK sent a letter to parents about Harper's harassment. *Id.* ¶ 27. The District subsequently placed Harper on leave and informed S.G.'s parents that the Harper matter had been referred to criminal law enforcement. *Id.* ¶¶ 30, 34. These allegations support an inference that the District became actually aware of Harper's harassment of S.G. at least on or around October 16, 2016.

Plaintiff's allegations also support a plausible inference of the District's knowledge prior to October 16, 2016. Plaintiff does not allege that she or anyone else directly informed Defendant Roberds of the harassment, but she alleges that Harper abused her openly and in plain view during Defendant Roberds' math classes. *See* FAC ¶ 10 (alleging that Harper's "grooming behavior" occurred in Roberds' presence). At this juncture, where all allegations must be interpreted in the light most favorable to Plaintiff, it is plausible to infer that, in the context of a closed and supervised classroom environment, Roberds, as the teacher in charge, in fact saw Harper's physical contact with S.G., including sitting inappropriately close, running his fingers through her hair, touching her breasts, or wrapping his arms around her. *Id.* ¶¶ 12-14. In the middle school environment, the teacher in charge is one "appropriate official . . . [who] reasonably could have responded with remedial measures to address the kind of harassment" at issue. *Lopez*, 5 F.Supp. at 1122 (citation and quotation omitted). Indeed, teachers are mandated reporters under California law, *see* Cal. Penal Code § 11165.7(a)(1), and must report acts such as inappropriate touching. *See* Cal. Penal Code § 11165.1(b)(4).

At this stage, Plaintiff's allegations are sufficient to support an inference of the District's actual awareness of Harper's sexual harassment of S.G. during a five month period before it took action.

2. The District's Deliberate Indifference

Deliberate indifference is established when a plaintiff shows that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Gebser*, 524 U.S. at 290. This presupposes a finding that an official "refuse[d] to take action to bring the recipient into compliance," in other words, "an official decision by the recipient not to remedy the violation." *Id.* The purpose of this standard is to eliminate the "risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions." *Id.* at 291. A recipient's response is typically adequate if it is not "clearly unreasonable." *Reese v. Jeferson School Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000) (explaining that "deliberate indifference occurs only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances" (citation and quotation omitted)).

The District argues that Plaintiff's allegations do not establish deliberate indifference because the District placed Harper on leave, informed S.G.'s parents of the abuse, and approved the parents' request for a school transfer. If such intervention had occurred immediately or reasonably soon after the District learned of the harassment, then Plaintiff's claims would likely fail insofar as they are premised on the failure to prevent the harassment itself. However, here, Plaintiff alleges that the District knew about Harper's abuse for five months before it intervened to protect her. FAC ¶ 142. There is no apparent explanation for the delay. Based on the District's alleged knowledge, the Court declines to dismiss the claim at this time.

The District's reliance on *Oden v. Northern Marianas College*, 440 F.3d 1085 (9th Cir. 2006) is inapposite. In *Oden*, a college student was sexually harassed by her music professor. *Id.* at 1086-87. When she reported the harassment to the college, the college:

(i) assigned advocates to help her file a sexual harassment complaint;

(ii) assisted her in dropping the harasser's class;

(iii) met with her 14 times to provide counseling;

(iv) forbade the harassing professor from contacting or attempting to contact the student in

10

1  any way; and,

2  (v) initiated a formal review process based on plaintiff's complaint.

*Id.* at 1087. The plaintiff nevertheless alleged that the college was deliberately indifferent because it did not convene a formal hearing on her complaint until nine months later, after which point the reviewing committee recommended disciplinary action short of dismissal despite concluding unanimously that the professor was guilty of sexual harassment. *Id.* The Ninth Circuit held that, in these circumstances, where the college "began to act as soon as it became aware" and took a number of remedial measures to assist and protect the plaintiff, and where the hearing was delayed based on the college's understanding that the plaintiff was looking for a lawyer, the record "d[id] not permit an inference that the delay was a deliberate attempt to sabotage Plaintiff's complaint or its orderly resolution." *Id.* at 1089. Moreover, the college's decision not to terminate the professor was insufficient to demonstrate deliberate indifference where he was otherwise "punished significantly for his improper actions." *Id.*

In contrast, here, the District did not act "as soon as it became aware." Moreover, even though it took action to remove Harper, it allegedly took no other action to remedy the hostile environment and the effects of harassment on S.G. It did not reach out to S.G.'s parents until 9 days after interviewing S.G., and then did so only in a letter that her parents could not understand. *See* FAC ¶¶ 27-29. A reasonable person might conclude that the sexual abuse of an 11-year-old merited, at the very least, a prompt phone call to S.G.'s parents. Additionally, the District did not offer counseling services to S.G. or even assess whether she needed them. *Id.* ¶¶ 38, 48. It was reluctant to provide S.G.'s parents with additional information. *Id.* ¶¶ 31-36. It did not even document Harper's harassment in S.G.'s school record, complicating her transfer request. *Id.* ¶¶ 40-43. It did not offer S.G. counseling or other support services to mitigate the harm of the harassment despite marked and apparent changes to her personality, demeanor, and emotional well-being. *Id.* ¶¶ 48-71. Nor it appears did the District promptly take any precautionary steps to remove S.G. from Harper's presence as soon as it learned of the abuse.

Thus, even if the District had removed Harper from campus immediately upon learning about the abuse, there would still remain a question whether it otherwise failed to take

"appropriate corrective action." FAC ¶ 124. Under Title IX, funding recipients have an obligation to take ""reasonable, timely, age-appropriate, and effective corrective action, including steps tailored to the specific situation," including to "remedy the effects of the harassment of the victim."[3] To fulfill its Title IX obligations, a federally-funded school "may be required to provide other services to the student who was harassed if necessary to address the effects of the harassment on that student," including "provid[ing] tutoring" or "offer[ing] reimbursement for professional counseling." *Id.* To be sure, the failure to provide "the precise remedy that [a plaintiff] would prefer" does not, in and of itself, support Title IX liability. *See Oden*, 440 F.3d at 1089. But here, Plaintiff alleges that *no* steps were taken to remedy the *effects* of Harper's harassment. The victim was an eleven-year-old girl. The harassment was perpetrated by an authority figure entrusted with her care and education. The impact on S.G. was severe. It transformed her personality. She withdrew from her family and has had trouble maintaining friendships. Though the effect on S.G. was apparent to the District (not to mention foreseeable), the District allegedly took no steps to remedy those effects. A reasonable person could conclude that the District's failure to take corrective action in these circumstances was "clearly unreasonable." *Reese*, 208 F.3d at 739.

For these reasons, Plaintiff has adequately pled the District's deliberate indifference and Defendants' motion is **DENIED**.

C. <u>Retaliation</u>

Plaintiff's seventh cause of action also alleges unlawful "retaliation" in violation of California Education Code § 201(f). As Defendants point out, however, there are no facts pled to

---

[3] *See* U.S. Department of Education, Office for Civil Rights, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties* (Jan. 19, 2001) (hereinafter ("2001 Guidance")), available at https://www2.ed.gov/about/offices/list/ocr/docs/shguide.html#VB1. *See also* U.S. Department of Education, Office for Civil Rights, *Sexual Harassment: It's Not Academic* (2008), available at https://www2.ed.gov/about/offices/list/ocr/docs/ocrshpam.html#_t1f ("[I]f the harasser is a school employee and if the harassment occurs while the employee is acting, or reasonably appears to be acting, in the context of carrying out his or her responsibilities to provide aid, benefits, and services, *the school must remedy the effects of the harassment on the victim.*" (emphasis added)); U.S. Department of Education, Office for Civil Rights, Guidance on Schools' Obligations to Protect Students from Student-on-Student Harassment on the Basis of Sex; Race, Color and National Origin; and Disability, at 2-3 (Oct. 26, 2010), available at https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.pdf (same).

1    describe the alleged retaliation. For example, Plaintiff does not allege who retaliated against her,
2    when, or in response to what. Accordingly, the Court **GRANTS** Defendant's motion to dismiss
3    the seventh cause of action insofar as it is premised on retaliation. Plaintiff may amend to attempt
4    to state a claim if she has grounds to do so.

D.  <u>Negligence Per Se</u>

Under California law, a rebuttable presumption of negligence is established when a plaintiff demonstrates (1) the defendant violated a statute; (2) the violation proximately caused harm to the plaintiff; (3) the harm resulted from the type of conduct the statute was designed to prevent; and (4) the plaintiff is amongst the class of persons protected by the statute. *See* Cal. Evid. Code § 669(a). Plaintiff's eighth cause of action alleges that Defendants had a statutory duty to report Harper's child abuse of S.G. but that they failed to do so. California law requires teachers who have "knowledge of or observe[] a child whom [they] know[] or reasonably suspect[] has been the victim of child abuse or neglect" to make a report "immediately or as soon is practicably possible," with a written follow-up within 36 hours, to the appropriate state agency. Cal. Penal Code § 11166(a).

Defendants argue that no breach of the duty to investigate has been alleged because Defendant Castro requested a statement from S.G. and the District subsequently placed Harper on leave and referred the matter to criminal law enforcement. Defendants overlook the critical issue of timing, however. As explained above, Plaintiff adequately alleges that Defendant Roberds actually knew of Harper's sexual abuse because much of it took place in plain view in Roberds' classroom and in her presence. Plaintiff does not allege a precise date when Roberds became aware of the harassment, but alleges that Harper's harassment took place over months in Roberds' classroom before Castro interviewed S.G. The Court can reasonably infer a plausible allegation that Roberds and/or the District did not report the abuse to a state agency "immediately or as soon as is practicably possible" after learning, or having reasonable suspicion of,[4] the abuse. *See* Cal.

---

[4] The mandatory reporting statute includes the following definition: "For purposes of this article, 'reasonable suspicion' means that it is objectively reasonable for a person to entertain a suspicion, based upon facts that could cause a reasonable person in a like position, drawing, when appropriate, on his or her training and experience, to suspect child abuse or neglect. 'Reasonable

13

Pen. Code §11166(a). Defendants' motion is **DENIED**.

E.     Negligent Supervision, Training, and Hiring/Retention

Plaintiff brings a variety of negligence claims based on the District's alleged negligent supervision, training, and hiring/retention of several employees. *See C.A. v. William S. Hart Union High School Dist.*, 53 Cal.4th 861, 874 (2012) (recognizing that school personnel "have a duty to protect students from harm, which includes an obligation to exercise ordinary care in hiring, training, supervising, and discharging school personnel," and that the school district may be liable for an administrator's negligence). Each claim is discussed separately below.

1.     Negligent Supervision

Plaintiff's ninth cause of action alleges that the District negligently supervised Defendants Harper and Roberds insofar as the district's teachers and administrators "failed to intervene on S.G.'s behalf for approximately five months" despite Harper's "inconspicuous and brazen sexual abuse in Defendant Roberds' classroom and on school grounds." FAC ¶ 142.

Defendant argues that Plaintiff's claim must be dismissed because it fails to allege that the District or its employees knew that Harper could not be trusted to act without supervision. *See Juarez v. Boy Scouts of Am.*, 81 Cal.App.4th 377, 395 (2000) ("[T]here can be no liability for negligent supervision in the absence of knowledge by the principal that the agent or servant was a person who could not be trusted to act properly without being supervised."). As explained above, however, Plaintiff adequately alleges that Defendant Roberds was aware of Harper's inappropriate behavior towards S.G. Moreover, a number of other unknown District employees (named as Doe Defendants) also allegedly observed Harper's harassment around school grounds. Though the complaint does not allege that Defendants should have known Harper could not be trusted before he began harassing S.G., Plaintiff adequately alleges that the District should have known at some point during the five-month period of abuse. Precisely when the District or its employees knew Harper could not be trusted will be a matter for discovery. Plaintiff's claim may depend on

suspicion' does not require certainty that child abuse or neglect has occurred nor does it require a specific medical indication of child abuse or neglect; any 'reasonable suspicion' is sufficient. For purposes of this article, the pregnancy of a minor does not, in and of itself, constitute a basis for a reasonable suspicion of sexual abuse." Cal. Penal Code § 11166(a)(1).

14

demonstrating that at unreasonable amount of time lapsed before the District took action against Harper after learning about the abuse. The Court **DENIES** Defendant's motion at this stage.

2. Negligent Training

Plaintiff's tenth cause of action alleges that the District had a duty of care to properly train its employees, but that it was negligent insofar as it failed to train Defendants Essien, Castro, and Roberds to properly "perform the duties required by Penal Code § 11166 [mandatory reporting], Education Code § 200, et seq., regarding prevention of sexual harassment, and SFUSD Board Policies 5141.4 and 5145.7 regarding prevention of child abuse and sexual harassment." FAC ¶ 146.

A claim for negligent training may lie when "the employer negligently trained the employee as to the performance of the employee's job duties and as a result of such negligent instruction, the employee while carrying out his job duties caused injury or damage to the plaintiff." *Garcia*, 627 F.Supp.2d at 1208 (citation omitted). Defendants argue that the allegation of inadequate training about the statutory duties discussed above is conclusory. To be sure, Plaintiff has not identified the training undertaken by the District or alleged specifically why it is insufficient. But that is not Plaintiff's burden at this stage—it is unclear how Plaintiff would be aware of behind-the-scenes training. In light of Plaintiff's allegations that Harper's harassment transpired in plain view of other District employees including one teacher for five months before any action was taken, it is plausible that one reason for the untimely action was inadequate training on how to recognize or respond to such harassment and abuse.[5] *Cf. Mouwakeh v. County of San Diego*, 2016 WL 3854546, at *3 (S.D. Cal. Jul. 15, 2016) (on *Monell* claim, holding that failure to train on appropriate use of force was plausible "given the extent and severity of Plaintiff's alleged injuries relative to the potential threat she likely posed to deputies").

Moreover, unlike other cases, the harm here could plausibly have been caused by

---

[5] The District employees' long-term knowledge and inaction is critical to this inference. The mere fact that the abuse occurred is not sufficient in and of itself to raise an inference of negligent training. *See C.A.*, 53 Cal.4th at 878 ("That an individual school employee has committed sexual misconduct with a student or students does not of itself establish, or raise any presumption, that the employing district should bear liability for the resulting injuries.").

15

insufficient training. That was not the case in *Flores v. County of Los Angeles*, 758 F.3d 1154, 1160 (9th Cir. 2014), where it was so obvious to any law enforcement officer sworn to uphold the law that they should not rape young women that the department's failure to specifically train on that issue could not plausibly have caused the sexual assault to occur. Similarly, in *Flores v. Autozone W., Inc.*, 161 Cal.App.4th 373, 385 (2008), the notion that an employee's physical attack of a customer could have been caused by "failure to understand that such an act would contravene [company] policies" due to insufficient training "d[id] not pass the straight face test."

In contrast, here, the California Penal Code's mandatory reporting requirements are triggered by "reasonable suspicion," a flexible and fact-specific standard that may require explanation. *See* Cal. Penal Code § 11166(a); *see supra* n. 4. Similarly, the steps that school administrators must take to mitigate and prevent a hostile environment under Title IX and the California Education Code may vary based on context. Unlike *County of Los Angeles* and *Autozone*, insufficient training on those duties (the application of which is not obvious) could have caused Plaintiff to suffer prolonged abuse or a hostile environment created by such abuse. As in *Mouwakeh*, *supra*, the duration of Plaintiff's abuse and the ongoing hostile environment she faced give rise to a plausible claim that the school administrators' failure to intervene was caused by the district's negligent failure to train them.

The Court **DENIES** Defendants' motion to dismiss this claim.[6]

---

[6] Defendants claim the negligence claims must also be dismissed because California law provides that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of discretion vested in him, whether or not such discretion be abused." Cal. Gov. Code § 820.2. Such immunity, however, only applies if (1) an employee is vested with the authority to exercise discretion; (2) the discretionary act is a basic policy decision rather than ministerial; and the exercise of discretion involves "a conscious balancing of risks and benefits." *Jones v. County of Los Angeles*, --- Fed. Appx. ----, 2018 WL 481334, at *2 (9th Cir. Jan. 19, 2018). Here, it is not clear that the employees were vested with discretion; California law *mandates* that they report certain acts of child abuse, and both state and federal law *require* them not to discriminate by failing to prevent harassment, tolerating a hostile environment, or failing to mitigate the effects of one. Additionally, even if they were vested with some discretion, Plaintiff's allegations do not establish that their failure to act here was the consequence of their exercise of discretion; in other words, it is not at all clear from the allegations that the Defendants made a considered decision to act the way they did. *Compare Nicole M. By and Through Jacqueline M. v. Martinez Unified School Dist.*, 964 F.Supp. 1369 (N.D. Cal. 1997) (finding school employees were immune from negligence claims based on handling of sexual harassment complaints, but complaint alleged that several measures were taken against harassers but were allegedly inadequate, supporting an

### 3. Negligent Hiring/Retention

Plaintiff's eleventh cause of action alleges that SFUSD "negligently hired and retained" Defendants Harper, Essien, Castro, and Roberds by "failing to ascertain when they were hired whether they could properly perform the[]" duties enumerated above. FAC ¶ 150. An employer may be liable for negligence if it "knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." *Doe v. Capital Cities*, 50 Cal.App.4th 1038, 1054 (1996). Although Plaintiff has adequately alleged that these employees breached their duties to her, Plaintiff does not adequately allege that the District knew or should have known *at the time of hiring* that the employees could not perform those duties. The sole allegations in this regard are conclusory. The Court **GRANTS** Defendant's motion to dismiss the negligent hiring/retention claim, but Plaintiff may have leave to amend if she can plausibly allege that the District knew or should have known of the employees' inability to perform their duties at the time of hiring.

### IV. CONCLUSION

Plaintiff's first, second, third, and fourth causes of action against the District are **DISMISSED** with prejudice to the extent they are based on vicarious liability for Harper's intentional torts, but remain in the case insofar as they are premised on the District's ratification of Harper's conduct. Defendants' motion to dismiss Plaintiff's sixth, seventh, and twelfth causes of action related to a hostile environment is **DENIED**, except that the motion to dismiss the claim for retaliation in the seventh cause of action is **GRANTED** with leave to amend. Defendants' motion to dismiss Plaintiff's eighth cause of action for negligence per se is **DENIED**. Defendants' motion to dismiss the ninth and tenth causes of action for negligent supervision and training is **DENIED**. However, the motion to dismiss the twelfth cause of action against the District for negligent hiring and retention of the employees is **GRANTED** for failure to allege the District

---

inference that discretion was in fact exercised). Nor was any discretionary act in reporting Harper a "basic policy decision." Thus, the defense of immunity for discretionary acts is at best premature on this motion to dismiss.

17

knew or should have known that the employees could not perform their statutory duties at the time of hiring. Plaintiff may file an amended complaint within thirty (30) days from the date of this order.

This order disposes of Docket No. 43.

**IT IS SO ORDERED**.

Dated: April 19, 2018

_____
EDWARD M. CHEN
United States District Judge